Allan D. NewDelman, Esq. (004066)
ALLAN D. NEWDELMAN, P.C.
80 East Columbus Avenue
Phoenix, Arizona 85012
(602) 264-4550
anewdelman@adnlaw.net
Attorneys for Debtor

IN THE UNITED STATES BANKRUPTCY COURT

IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re | ) In Proceedings Under |
| | ) Chapter 11 |
| CALES & FITZGERALD, PLLC, | ) |
| | ) Case No. 2-20-bk-10911 DPC |
| | ) |
| | ) CHAPTER 11 (SUBCHAPTER V) |
| | ) PLAN OF REORGANIZATION |
| | ) DATED DECEMBER 28, 2020 |
| | ) |
| Debtor. | ) |

## I.   INTRODUCTION, DEBTOR'S BACKGROUND, EVENTS LEADING TO CHAPTER 11 BANKRUPTCY FILING

Debtor, Cales & Fitzgerald, PLLC, hereinafter referred to as ("Debtor" or "Cales & Fitzgerald"), filed a voluntary petition for relief in the United States Bankruptcy Court for the District of Arizona under Chapter Eleven on September 29, 2020. At the time of filing the Debtor elected to proceed under Subchapter V, Small Business Debtor Reorganization.  This Plan is filed pursuant to 11 U.S.C. §§1189 and 1190.

A.   Background and Events Leading to the Chapter 11:

Cales & Fitzgerald, PLLC, an Arizona professional limited liability company, was formed on September 1, 2018.  Lane Fitzgerald was and always has been its only member.

On or about September 27, 2018, Gloria L. Cales, P ,C. ("Seller"), and Gloria L. Cales, the Seller's sole Principal and the Debtor, Fitzgerald/Cales, PLLC (a/k/a Cales & Fitzgerald, PLLC) as the Purchaser (herein "Debtor"), entered into an Asset Purchase Agreement, ("APA"). As recited in the APA, as of September 27, 2018, Seller operated "a professional law practice in the State of Arizona (the "Practice"), practicing in certain areas of law, including, without limitation, family law, in and out of those certain premises located at 16515 South 40th Street, Suite 141, Phoenix, Arizona 85048 (the "Premises")." As of September 27, 2018, Seller owned the real estate and the fixtures located at the Premises.

As recited in the APA, "Purchaser (Debtor) desires to purchase the Practice consisting of retained family clients who have or have not yet filed a petition, as set forth herein, and the Seller and Principal desire to sell the same to the Purchaser (Debtor), upon the terms and subject to the conditions set forth in this Agreement."

The assets purchased by the Debtor from Seller included: "the Practice, the Real Estate, and the assets of the Seller related thereto or used in the operation thereof, and for retained clients who have not yet filed their family law case, free and clear of any liens, claims, or other encumbrances of any kind or nature, except as may otherwise be expressly set forth herein (collectively, the "Purchased Property")."

The Purchased Property was more particularly described as:

(a)     All of Seller's rights to all paper and electronic files related to any of the persons and entities listed in Schedule 1.l(a), attached hereto, and all subsidiaries, affiliates and successors thereto, together with all persons or entities introduced to Purchaser by Seller or Principal as potential clients following the Closing who thereafter engage Seller to perform legal services with respect to the Practice and/or the area of law of family (collectively, the "Clients"), except as otherwise directed by Clients,

2

including all correspondence, notes, pleadings, briefs, memoranda, court filings, agreements, documents, maps, pictures and all drafts of any of the foregoing, whether generated by Seller or any of its agents or received by Seller;

(b)    All of Seller's rights to perform any work for Clients after the Closing Date and all accounts receivable and rights of payment with respect thereto, for all clients and accounts listed in Schedule 1.1 (a);

(c)    The real property and improvements thereon on which the Practice is located (the "Business Premises") pursuant to the terms and conditions of that certain Real Estate Purchase Contract fully executed by the Parties; and

(d)    All furniture, fixtures, and assets of the Business except those Excluded Assets described below.

Attached to the APA was a fully-executed "Bill of Sale and Assignment". In this Bill of Sale and Assignment, the Seller conveyed "all of Seller's right, title and interest to the Purchased Property (as identified in the [APA] to the Purchaser, except for 'Excluded Assets.'"

The conveyance to the Debtor of the Purchased Property was "free and clear of any and all liens, security interests or other encumbrances." Further, the transfer of the above-referenced Purchased Property was absolute and unconditional, and effective – if not earlier – as of the execution of the Bill of Sale and Assignment. Neither the Seller nor Ms. Cales retained any security interest in the Purchased Property. In addition, there are no provisions in the APA that permit Seller or Ms. Cales to recover ownership or possession of any portion of the Purchased Property based on any actual or claimed breach by the Debtor of any obligation or provision of the APA. In fact, the Bill of Sale and Assignment promises that Debtor will "have and hold said Purchased Property unto Purchaser, its heirs, successors and assigns forever."

3

The total purchase price to be paid by the Debtor under the APA to Seller was $1,140,000.00, as set forth in APA Section 2.1(a). Of this purchase price, the APA allocated $700,000 to the purchase of Seller's business. Seller received a $109,000 down payment from the Debtor in or about September 2018, as part of the purchase price. Prior to the closing of the APA, the Debtor had paid $5,000 in earnest money, funds that were released to the Seller when the transaction set forth in the APA closed.

Seller received approximately $855,000 of the purchase price in cash from the Small Business Administration ("SBA"). Section 3.3 of the APA listed various "conditions precedent to Seller's duty to close." All of the conditions precedent listed in Section 3.3 had been materially completed at or prior to the closing of the transaction set forth in the APA. None of the conditions precedent to Seller's obligation to close mentioned any law license that must be obtained by the Debtor or any related individual. Because Seller's obligations did not depend on whether the Debtor or any individuals affiliated therewith obtained a license to practice law in Arizona, no events related to obtaining such a license can constitute a defense to enforcement of Seller's obligations under the APA.

Section 3.2 of the APA listed various "conditions precedent to Purchaser's (Debtor's) duty to close." All of the conditions precedent listed in Section 3.2 had been materially completed at or prior to the closing of the transaction set forth in the APA. Section 3.2(viii) of the APA states: "The Purchaser (Debtor) shall be in the process or shall have completed and become duly licensed attorney in the State of Arizona and the District of Arizona. Upon agreement of the parties, Closing may occur before actual licensure."

4

Lane Fitzgerald, the principal of the Debtor was "in the process" of becoming a duly licensed attorney in Arizona as of the closing of the transaction set forth in the APA. The APA specifically contemplated that the principal of the Debtor would not be a licensed Arizona attorney as of the closing date.

Section 6.3(g) (the "Cooperation Provision") of the APA provides, "Following the Closing, Seller will cooperate with Purchaser (Debtor) in its efforts to continue and maintain for the benefit of Purchaser (Debtor) those business relationships of Seller existing prior to the Closing and relating to the Practice to be operated by Purchaser (Debtor) after the Closing, including relationships with regulatory authorities, suppliers and others, and Seller will satisfy the Excluded Liabilities in a manner that is not detrimental to any of such relationships. Seller will refer to Purchaser (Debtor) all inquiries relating to the Practice or Purchased Property."

Section 6.3(i) (the "Non-Competition Provision") provides "Subject to and as provided in the Arizona Rules of Professional Conduct (including as allowed on behalf of the Purchaser), including Rule 1.17, Seller shall cease to engage in the area of practice that has been sold and transferred pursuant to this Agreement, acknowledged as the area of family, from an office that is within a one hundred (100) mile radius of the Premises."

Throughout Ms. Cales's time at Debtor's business, Ms. Cales routinely instructed paralegals and legal assistants to bill their time at attorney rates to defraud clients and increase revenue through Ms. Cales' nefarious business practices.

Ms. Cales deliberately withheld material facts from the Debtor to induce it to acquire her business. At the very minimum, Ms. Cales withheld all of the following:

5

A.    Ms. Cales would routinely and regularly instruct paralegals and legal assistants to bill at attorney rates.

B.    Lisa Broadus, an employee of the Seller, is a convicted felon. Was convicted of a crime of moral turpitude and said criminality immediately brings Lisa Broadus' trustworthiness and character into serious question.

C.    Ms. Cales never intended to retire.

D.    Ms. Cales never intended to cooperate with the transition of the Practice to the Debtor.

E.    Ms. Cales intended to defraud the Debtor of the funds used to purchase the Practice.

F.    Ms. Cales intended to defraud the Debtor of the funds received from clients after the purchase of the Practice.

Ms. Cales made repeated promises to the Debtor, verbally and written, that she would continue to be the Arizona licensed attorney for the Debtor. Ms. Cales filed with the Arizona Supreme Court on December 3, 2018 a certificate that she would be the supervising attorney for the Debtor. Ms. Cales never revoked this promise to be Debtor's supervising attorney.  Said certification required Ms. Cales to be the supervising attorney for the Debtor for 365 days or until revoked.  Ms. Cales was the supervising attorney for the Debtor pursuant to Arizona Ethics Rule 5.1.

Ms. Cales failed to cooperate in the operation of the Practice. She refused to work appropriately with the Debtor with respect to client representation. Instead, she opened an office from which to practice law within less than one hundred miles of the location of the Premises, in violation of the Non-Competition Provision.  In addition to being a breach of the APA, this action was also a violation of Arizona Ethics Rule 1.17.

Ms. Cales misappropriated funds from the Debtor.  Further, she failed to provide proper notices to clients of the sale of the Practice in violation of Arizona Ethics

6

1.17. She breached her confidentiality obligations under the APA as well as her duty of good faith and fair dealing by depriving the Debtor of the benefits of the APA.

Ms. Cales, herself and by instruction to the staff retained by the Debtor for the transition, refused to provide the Debtor with passwords for accounts allowing access to purchased assets including but not limited to computer network, office computers and monitored security alarm system. Ms. Cales refused to associate with or share information with the Debtor on the firm trust account.

In about May 2019, Ms. Cales and Mr. Davis, an associate of Ms. Cales, removed client files, furniture, and other items personal items of the Debtor from the Premises. On the morning following this removal, Mr. Davis met Mr. Fitzgerald outside Premises, handed him keys, and stated "good luck." Ms. Cales and Mr. Davis had no right to remove these items. Despite demand, Ms. Cales and Mr. Davis have not returned these items to Debtor. The Debtor has suffered severe, ongoing and irreparable damage as a result and the loss of anticipated revenues.

In an effort to recover damages and force Ms. Cales to take responsibility for her actions, the Debtor filed a lawsuit in the Superior Court, Maricopa County on June 3, 2019 under Case Number CV2019-051886. Litigation continued for just over 1 year and is still pending. As a direct result of the damages caused by Ms. Cales, the Debtor was unable to provide payment on the SBA loan. The SBA lender, Byline Bank, issued a Notice of Trustee Sale and, in an effort to stop the foreclosure of the Premises, the Debtor filed for Chapter 11 bankruptcy relief on September 29, 2020 just hours before the scheduled Trustee Sale.

7

### *Post-Petition Events*

Upon the filing of this case it became abundantly apparent that this was not your ordinary Subchapter V case. While the filing had its intended effect of postponing the schedule Trustee Sale of the Debtor's commercial building, just ten days after the filing the lienholder filed a Motion for Relief From the Automatic Stay. Less than one week later, Gloria Cales filed an Emergency Motion to Remove Names From Master Mailing List arguing that most of the individuals listed on Schedule F were not creditors of the bankruptcy estate. The Court set an emergency hearing on Ms. Cales Motion and negotiations relating to the same began. At the same time, and directly related to the pending state court litigation against Ms. Cales, Ms. Cales, through her Counsel, presented a proposal to settle the controversy directly to the Subchapter V Trustee, thus bypassing the Debtor and its Counsel. This improper action resulted in the filing of a Notice of Substantial Offer Benefitting Unsecured Creditors, filed by the Subchapter V Trustee. This Notice contained the "history" of the litigation from the side of the Defendant, not the Debtor, and proposes that the Defendant, Ms. Cales, provide payment to the bankruptcy estate of $439,000.00, an amount, in the opinion of the Debtor, is simply unacceptable.

While discussions with the creditors and the and the Subchapter V Trustee were moving forward, Counsel for the Debtor realized that he was not familiar enough with bankruptcy court procedure. The Debtor, through its Counsel, reached out to current counsel and, on November 4, 2020 a Motion for Substitution of Counsel was filed. An Order authorizing the substitution was entered by the Court that same day. Since that time, the parties continued discussions relative to the pending Motion for Relief From

8

Stay and the Emergency Motion to Remove Names from the Master Mailing List. At the same time, Cales & Fitzgerald was forced to defend its right to be in Chapter 11 as Gloria Cales, in her attempt to steal the cause of action against her, filed a frivolous Motion to Convert this case to Chapter 7.

With the issue relating to the removal of names from the Master Mailing list having been resolve and with the Motion to Convert is still pending, Cales & Fitzgerald is now ready to move forward with this Plan of Reorganization under Subchapter V and to vigorously pursue its litigation against Gloria Cales in State Court.

## II. **SUMMARY OF PLAN**

This Plan of Reorganization (the Plan) proposes to pay the creditors with allowed claims from the recovery of litigation pending in the Maricopa County Superior Court under Case Number CV2019-051886 and to the extent necessary, the contribution from the principal of the Debtor, Lane Fitzgerald so that all creditors with allowed claims are paid in full.

The Plan provides for 4 classes of claims to be paid or administered in the following manner.

Non-priority, non-insider unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has estimated at 100% percent on the dollar. All creditors and equity security holders should refer to Articles III through XII of this Plan for information regarding the precise treatment of their claim(s).

**YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE. (IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.)**

9

## III.    PLAN OF REORGANIZATION

Classes 2 and 4 are not impaired under the Plan, or not entitled to vote, in that the Plan does not alter the legal or contractual rights to which the holders of such claims are entitled and/or the Bankruptcy Code permits payment over an extended period of time and/or the holder of the claim has agreed to a different treatment.

Class 1 and 3 are impaired under the Plan.

All allowed and approved claims or judicially determined claims in Class 3 will receive those amounts as reflected in the payment schedule under the Plan. The Plan **Distribution Date** shall be thirty (30) days from the date that the **Effective Date** of the Plan and every thirty (30) days thereafter. (See General Provision, Article XII, for defined terms.) The claims under the Plan shall be paid or administered in the following manner:

Unclassified Claims. The total amount of attorneys fees owed to Debtor's Bankruptcy Counsel, Allan D. NewDelman, as of December 16, 2020 is $16,298.24 subject to an offset against retainer of $1,124.00 leaving a current balance of $15,174.24. Debtor believes, at the time the Debtor's Chapter 11 Plan is confirmed, there will be an additional attorney's fees administrative expense claim in the approximate amount of $4,000.00 bringing the total balance due but not paid to $19,174.24. Payment to Debtor's Counsel shall be out of the recovery of damages against Gloria Cales in the pending State Court litigation or from the contribution of Debtor's principal, Lane Fitzgerald.

In addition, the Chapter 11, Subchapter V Trustee will have an administrative expense claim in the approximate amount of $5,000.00. Payment to the Subchapter V

10

Trustee shall be out of the recovery of damages against Gloria Cales in the pending State Court litigation or from the contribution of Debtor's principal, Lane Fitzgerald.

The administrative expense claims of Debtor's counsel and the Chapter 11 Trustee are subject to approval by the Bankruptcy Court.

<u>Secured Claim - Byline Bank (Class 1) - Claim 2-2</u>

Byline Bank ("Byline") filed a Secured Proof of Claim on November 4, 2020 in the amount of $1,013,934.34. On December 7, 2020 an Order was entered terminating the Automatic Stay so as to permit Byline to complete a non-judicial foreclosure ("Trustee Sale") of a commercial building located at 16515 South 40th Street, Phoenix, Arizona, 85048. Byline has advised Debtor's Counsel that the net proceeds of the Trustee Sale must be applied to the principal. It is therefore anticipated that the principal balance of the Secured Claim shall be reduced by approximately $445,000.00. As of the Trustee Sale date, arrears will be approximately $118,000.00.[1]

Byline shall be paid all interest arrears over a four (4) year period commencing on the 13th month after Confirmation and through month 60 of the Plan. This will be in equal monthly installments, in the amount of $2,458.00 per month as permitted by the Bankruptcy Code.

The principal balance owed to Byline (to be determined as of the date of the Trustee Sale) shall be paid with interest at the rate of six percent (6%) per annum and payable over the remaining term of the Loan between the Debtor and Byline Bank. Pursuant to loan documents attached to the Proof of Claim, the term expires on September 26, 2043. This monthly payment, in the amount of shall commence 30 days

---

[1]As of September 29, 2020 pre petition interest of $104,086.06 and post petition interest of $19,128.85.

11

after Byline transmits a full and complete account status to Debtor and Debtor's Counsel subsequent to the Trustee Sale.

Byline shall maintain its secured lien upon the assets of the estate pursuant to its perfected UCC1 recorded on September 27, 2018, recording number 2018-003-9176-1. **This Class is impaired.**

<u>Unsecured Priority Claim - Internal Revenue Service (Class 2) - Claim No. 1-1.</u>

The Internal Revenue Service ("IRS") asserts a priority claim in the amount of $1,200.00 partially based upon estimated taxes resulting from unfiled FICA and FUTA tax returns for 2018 through the Petition date. This priority amount shall be paid out of the recovery of damages against Gloria Cales in the pending State Court litigation or from the contribution of Debtor's principal, Lane Fitzgerald. It is not known when payment will be tendered however, all payments on the priority claim will be paid within 60 months of the Petition date. As the Debtor is not operating there will not be any post petition withholdings. **This Class in not impaired.**

<u>General Unsecured Claims (Class 3)</u>

All allowed and approved claims under this Class shall be paid under this Plan. **This Class is impaired.**

A Bar Date Notice to file claims has been noticed to all creditors and parties in interest. That Bar Date expired on December 8, 2020.[2] The following creditors remain creditors of this estate therefore, Class 3 shall be made up of the following creditors:

---

[2]There are only five (5) timely claim. Claim No. 1 is the IRS and is treated as a priority claim in Class 2. Claim No. 2 is Byline Bank and is treated as a secured claim in Class 1.

12

| Creditor Name | Claim No. | Claim Amount | Status |
|---|---|---|---|
| Lang & Klain, P.C. | 3-1 | $24,069.75 | Disputed |
| Gloria Cales | 4-1 | $654,912.23 | Disputed |
| Harrach Law | 5-1 | $4,280.37 | Disputed |

A timely objection will be filed to these claims. Payment to any creditor in this Class that is adjudicated to be an allowed claim shall be paid out of the recovery of damages against Gloria Cales in the pending State Court litigation or from the contribution of Debtor's principal, Lane Fitzgerald. Payments shall commence 13 months from the Plan Distribution Date and shall be completed no later than the 60th month of the Plan.

<u>Debtor's Interest (Class 4)</u>

Debtor shall retain all of the legal and equitable interest in the assets of this estate, as all reconciliation issues have been met. **This is a non voting class**.

## IV.    DISPUTED CLAIMS

The Debtor reserves the right to verify and object to any proof of claim. Payment of disputed claims shall be made only after agreement has been reached between the Debtor and the Creditor or upon the order of the Court. Any and all objections to proofs of claim will be filed within thirty (30) days of the Effective Date of this plan or will be waived. If any disputed claim is subsequently allowed by the Court such claim shall be paid under Class 3.

## V.    EXECUTORY CONTRACTS

Schedule G shows that there are no executory contracts.

## VI.    MEANS OF EXECUTION/PROJECTION

The funds necessary for the payment of approved and allowed claims will be derived from the Debtor's liquidation of estate assets, including the recovery of damages against

13

Gloria Cales to which Special Counsel will be been employed to pursue or from the Debtor's principal, Lane Fitzgerald. The duration of the Plan shall be no greater than 60 months from the Distribution Date.  To support feasability of payments under this Plan from Lane Fitzgerald, if such is required, attached hereto and incorporated herein by reference as **Exhibit "A"** is Mr. Fitzgerald's financial statement.

## VII.    CHAPTER 7 LIQUIDATION ANALYSIS

Pursuant to the provisions of the Bankruptcy Code providing for Court approval of a Plan of Reorganization, the Debtor is required to pay creditors at least as much as creditors would receive in a Chapter 7 liquidation case, after costs of administration and the liquidation of the Debtor's assets.  The Liquidation Analysis represents an estimate of recovery based upon hypothetical liquidation assumptions whereby a Trustee would conduct the Chapter 7 liquidation to convert assets to cash and settle claims.  The determination of the hypothetical proceeds from the liquidation of assets is an uncertain process involving the use of estimates and assumptions that, although considered reasonable, are inherently subject to business, economic and competitive contingencies beyond the control of the Debtor.  The Debtor believes that by virtue of the Plan that it will have the ability to pay all allowed and approved claims pursuant to the Plan of Reorganization.

14

## LIQUIDATION ANALYSIS[3]

| ASSETS | VALUE | LIEN[4] | VALUE TO ESTATE |
|---|---|---|---|
| Commercial building | $480,000.00 | $1,013,934.34 | Property surrendered |
| Theft from trust acct | $333,809.17 | $see above | $0.00 |
| Trst. Acct. dep. at Harrach Law | $ 400.00 | $see above | $0.00 |
| Embezzled funds | $358,485.00 | $see above | $158,759.83 |
| Embezzled funds | $105,600.00 | $0.00 | $150,600.00 |
| Acct receivable | $194,614.00 | $0.00 | $194,614.00 |
| Office furniture | $ 6,580.00 | $0.00 | $ 6,580.00 |
| Office fixtures | $ 3,900.00 | $0.00 | $ 3,900.00 |
| Customer list | $Unknown | $0.00 | $Unknown |
| Goodwill | $Unknown | $0.00 | $Unknown |
| Fraud claim against many | $Unknown | $0.00 | $Unknown |
| Negligence claim | $Unknown | $0.00 | $Unknown |
| Theft claim against many | $Unknown | $0.00 | $Unknown |
| Additional accounts receivable | $Unknown | $0.00 | $Unknown |
| Gross revenues of Gloria Cales | $Unknown | $0.00 | $Unknown |

## CHAPTER 7 RECONCILIATION

| | |
|---|---|
| Property of the Estate not otherwise encumbered | $Unknown |
| Less Chapter 7 Trustee Fees | < $ Unknown > |
| Less cost of sale (10% of sale price) | < $ Unknown > |
| Funds available after liquidation of all assets | $Unknown |
| Less priority creditors | < $ 1,200.00 > |
| Less Chapter 11 Admin. Fees | < $25,298.24 > |
| TOTAL AVAILABLE TO UNSECURED CREDITORS: | $Unknown |

## VIII. **FEASABILITY AND REMEDIES UPON DEFAULT**

Should this Case proceed to Confirmation under 11 U.S.C. § 1191(b), Debtor submits that this Plan does not discriminate unfairly and is fair and equitable with respect to each class of claims or interest that is impaired under, and has not accepted the Plan. The Debtor further submits that it will be able to make all payments under the Plan out of the recovery of damages against Gloria Cales in the pending State Court

---

[3]Based upon the original Schedules and any amendments thereto.

[4]All property of the estate, not otherwise encumbered, is subject to the lien of Byline Bank against the Commercial Building and a properly perfected/recorded UCC1. As of the Petition date the amount due to this creditor was $1,013,934.34.

15

litigation or from the contribution of Debtor's principal, Lane Fitzgerald, or there is a reasonable likelihood that the Debtor will be able to make all payments under the Plan out of the recovery of damages against Gloria Cales in the pending State Court litigation or from the contribution of Debtor's principal, Lane Fitzgerald. .

Unless otherwise specified under this Plan or pursuant to a separate Court Order, the Debtor's failure to make any payment due under the Plan to Class 3 within thirty (30) days after demand for payment after its due date shall constitute a default unless the Debtor and the affected creditor agree to delayed payment. If any default is cured within said thirty (30) day cure period, then the Creditor shall not be entitled to enforce any remedies which would be otherwise available on account of the default. In the event the Debtor does not cure the default, the Debtor reserves the right to seek modification of this Plan pursuant to 11 U.S.C. § 1193, if applicable. In the event Debtor fails to cure the default or to obtain a modification of the Plan, Byline Bank (Class 1), shall continue to hold legal rights against Lane Fitzgerald pursuant to the personal guarantee and may foreclose upon any remaining collateral. In the event Debtor fails to cure the default or to obtain a modification of the Plan, Creditors in Class 3 shall have all rights and remedies under State law and the Automatic Stay shall be immediately terminated.

Any Notice of Default must be sent in writing to both the Debtor and the Debtor's counsel at the addresses listed below:

> Cales & Fitzgerald, PLLC
> c/o Lane Fitzgerald, Esq.
> 2031 Riverside Drive
> Suite A
> Beloit, WI 53511

16

Allan D. NewDelman, Esq.
Allan D. NewDelman, P.C.
80 East Columbus Avenue
Phoenix, AZ 85012

## IX.   **DISCHARGE**

If the Debtor's Plan is confirmed under §1191(a), on the effective date or confirmation of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in §1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

(i) imposed by this Plan; or

(ii) to the extent provided in §1141(d)(6).

If the Debtor's Plan is confirmed under §1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the Court grants a discharge on completion of all payments due under the Plan. The Debtor will not be discharged from any debt:

(i ) on which the last payment is due after completion of the Plan, or as otherwise provided in §1192; or

(ii) excepted from discharge under §523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

## X.   **IMPLEMENTATION AND CONSUMMATION OF PLAN**

The Debtor's status as Debtor-in-Possession, upon the entry of an Order confirming the Debtor's Plan of Reorganization, shall terminate and the Debtor shall continue to operate its affairs in the ordinary course and are authorized to engage in any lawful business activities and transaction without Court approval.

17

Consistent with Article VIII relating to remedies upon default, non exempt property of the estate shall not vest in the Debtor until payments under the Plan are completed unless otherwise Ordered by the Court.

**ALL CREDITORS SHALL REMAIN BOUND BY THE TERMS AND CONDITIONS SET FORTH IN THE DEBTOR'S PLAN OF REORGANIZATION. NO CREDITOR SHALL BE ALLOWED TO TAKE ANY COLLECTION ACTION AGAINST THE DEBTORS AS LONG AS THE DEBTOR REMAINS IN COMPLIANCE WITH THE PLAN OF REORGANIZATION.**

It shall be the obligation of each creditor participating under the Plan to keep the Debtor advised of its current mailing address. In the event any payments tendered to creditors are mailed, postage prepaid, addressed (1) to the address specified in the Debtor's schedules and statement, (2) to the address specified in any proof of claim filed by a creditor or claimant herein <u>or</u> (3) to the address provided by any such creditor or claimant for purposes of distribution, and if subsequently the Post Office returns such distribution due to a lack of insufficiency of address or forwarding address, the Debtor shall retain such distribution for a period of six (6) months. Thereafter, the distribution shall revert to the Debtor without further Order of the Court and free and clear of any claim or the named distributee. The Debtor shall thereafter not be required to mail subsequent distributions to any creditor for whom a distribution has been returned by the Post Office.

18

## XI.  RETENTION OF JURISDICTION

The Bankruptcy Court will retain jurisdiction over this case for purposes of determining the allowance of claims or objections to claims.  The Court will also retain jurisdiction for purposes of fixing allowances for compensation and/or for purposes of determining the allowability of any other claims administrative expenses.  The Court will also retain jurisdiction for the purpose of establishing bar dates and making a determination with respect to all disputed claims.  Finally, the Court shall retain jurisdiction for purposes of determining any dispute arising from the interpretation, implementation or consummation of the Plan to implement and enforce the provisions of the Plan and to enter a Chapter 11 Discharge Order.  Notwithstanding anything to the contrary contained herein, the Debtor shall not be bound by estoppel, the principles of res judicata or collateral estoppel with respect to any term or provision contained herein in the event the Plan is not confirmed.

## XII.  GENERAL PROVISIONS

A.      Confirmation Date:  The date in which the Court enters an Order confirming the Chapter 11 Plan of Reorganization.

B.      Effective Date:  The Effective Date of this Plan is fifteen (15) days after the entry of the Confirmation Order.

C.      Distribution Date: The distribution date shall be thirty (30) days after the Effective Date.

19

1    The headings contained in this Plan are for convenience of reference only and do

2    not affect the meaning or interpretation of this Plan.

3
     DATED this 28th day of December, 2020.
4
5                                      ALLAN D. NEWDELMAN, P.C.

6

7                                      Allan D. NewDelman, Esq.
8                                      Attorney for Debtor

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



The above Chapter 11 Plan, consisting of
20 pages, plus Exhibit "A" is approved as
to form and content:

Cales & Fitzgerald, PLLC

By
Lane Fitzgerald, its Managing Member

# EXHIBIT "A"

# Personal Financial Statement of:

Lane Fitzgerald
**as of:**
12/23/2020

| Assets | Amount in Dollars | |
|---|---|---|
| Cash - checking accounts | $ | 22,000 |
| Cash - savings accounts | | 500 |
| Certificates of deposit | | - |
| Securities - stocks / bonds / mutual funds | | 25,000 |
| Notes & contracts receivable | | 178,000 |
| Life insurance (cash surrender value) | | - |
| Personal property (autos, jewelry, etc.) | | 30,000 |
| Retirement Funds (eg. IRAs, 401k) | | 15,000 |
| Real estate (market value) | | - |
| **Total Assets** | **$** | **270,500** |

| Short Term Liabilities | Amount in Dollars | |
|---|---|---|
| Current Debt (Credit cards, Accounts) | $ | 22,000 |
| Vehicle Loan | $ | 20,000 |
| Taxes payable | | 5,000 |
| **Total Liabilities (See Note 1)** | **$** | **47,000** |

| **Net Worth** | **$** | **223,500** |
|---|---|---|

**Note 1 (Excluded Liabilities)**
**Long Term Liabilities**
Byline Bank Loan                $500,000