Alan A. Meda (#009213)
Andrew Abraham (#007322)
Edwin D. Fleming (#009685)
BURCH & CRACCHIOLO, P.A.
1850 N. Central Ave., Suite 1700
Phoenix, AZ 85004
Tel: 602.274.7611
ameda@bcattorneys.com
aabraham@bcattorneys.com
efleming@bcattorneys.com

*Attorneys for Gloria Cales*

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re<br><br>CALES & FITZGERALD PLLC,<br><br>Debtor. | Chapter 11 Subchapter V<br><br>Case No.: 2:20-bk-10911-DPC<br><br>**GLORIA CALES' RESPONSE BRIEF TO DEBTOR'S OPENING MEMORANDUM RE DISMISSAL OR CONVERSION**<br><br>Hearing Date: **March 11, 2021**<br>Hearing Time: **1:30 p.m.** |

Gloria Cales ("**Gloria Cales**"), by and through counsel undersigned, hereby responds to *Debtor's Opening Memorandum Re: Dismissal or Conversion* filed by Debtor Cales & Fitzgerald PLLC ("**Debtor**") at DE 127 ("**Debtor's Brief**"). This response brief relates to Gloria Cales *Motion to Convert to Chapter 7* [DE 62] (the "**Conversion Motion**") seeking to convert this Chapter 11 Subchapter V proceeding of Debtor to a proceeding under Chapter 7 of the Bankruptcy Code and is supported by the entire record of Debtor's bankruptcy case and by the following Memorandum of Points and Authorities all of which are incorporated herein by this reference.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

It is evident from Debtor's brief that most of the history of this bankruptcy case is undisputed. Debtor filed a voluntary chapter 11 bankruptcy petition on September 29, 2020 allegedly to protect a commercial building located at 16515 South 40th Street, Phoenix, AZ 85048 (the "**Property**"). Secured Creditor Byline Bank ("**Byline**") filed a stay relief motion to which Debtor did not timely respond. Ultimately, Debtor withdrew its late-filed objection altogether, stay relief was granted to Byline, and Byline foreclosed on the Property leaving a substantial deficiency claim against Debtor. Debtor has withdrawn its plan of reorganization and acknowledged that it has no prospect for reorganizing in chapter 11. Finally, Debtor has acknowledged that "cause" as contemplated by 11 U.S.C. § 1112(b)(4) exists to convert or dismiss debtor's bankruptcy case.

Debtor asserts that dismissal is the right choice and Gloria Cales urges the Court to convert the Debtor's case to a proceeding under Chapter 7. Significantly, Debtor has not offered to satisfy the administrative, priority and unsecured claims of Debtor's bankruptcy estate. At this point, Debtor's only asset is a disputed cause of action asserted against Gloria Cales. Debtor has not made any attempts to settle the litigation claims against Gloria Cales and has not responded to settlement offers that could be used to pay claims of Debtor's creditors. Instead, Debtor intends to litigate the claims, and to ignore the claims of creditors and administrative claimants forcing them to gamble with Debtor on the uncertain outcome of the litigation. Debtor's strategy is not in the best interest of Debtor's creditors and holders of administrative claims but is designed to promote the best interest of debtor's principal, Lane Fitzgerald. Debtor is hopelessly conflicted, and it is time to put control of the outcome of this case in the hands of a neutral third-party fiduciary; namely, a chapter 7 trustee.

## II. LEGAL ANALYSIS

### A. The Claims Against Gloria Cales in the State Court Litigation.

As the Court is aware, Gloria Cales and Debtor have been embroiled in state court litigation relating to a dispute concerning the purchase and sale of certain assets (the "**Sale Transaction**") of a family or domestic relations law firm, Gloria L. Cales, P.C., an Arizona professional limited liability company and its principal, Gloria Cales to Fitzgerald/Cales, PLLC, an Arizona professional limited liability company ("**Fitzgerald/Cales**"). Fitzgerald/Cales is the predecessor in interest to Debtor. In the State Court Litigation, Debtor and Gloria Cales have asserted disputed claims against each other Debtor related to the Sale Transaction. The claims asserted by Debtor against Gloria Cales include claims for breach of contract, conversion, fraud, fraud and inducement, tortious interference with contract, and unjust enrichment, money had and received, and for an accounting.

During the pendency this bankruptcy case, Debtor has failed to engage in any settlement discussions relative to the State Court Litigation. Additionally, Debtor has also failed to engage in any settlement discussions with Byline Bank. Indeed, Debtor's only justification for seeking a dismissal of the case (as opposed to conversion) is the assertion that Byline has a security interest in any settlement funds received from Gloria Cales, and therefore, conversion cannot benefit any creditor other than Byline Bank. Debtor's conclusion relative to the scope of Byline Bank's security interest is flawed. Any settlement funds received from Gloria Cales are not entirely the collateral of Byline Bank and Debtor's adoption of Byline Bank's position again demonstrates the conflict of interest that exists in this case and the need for a third-party fiduciary in the form of a chapter 7 trustee.

### B. Byline Bank's Collateral.

Byline Bank describes its collateral as "All equipment, fixtures, inventory, accounts, instruments, chattel paper, general intangibles, documents, and deposit accounts now owned or hereafter acquired, together with all replacements, accessions,

proceeds, and products" *See* UCC-1 Financing Statement filed with the Arizona Secretary of State on September 27, 2018 at Document No. 2018-003-9176-1 (the "**Byline Bank UCC**") and attached to Byline Bank's Proof of Claim 2-3 at page 68 of 85. According to Debtor, the reference to "general intangible" includes any settlement proceeds received from Gloria Cales. While it is understandable for Byline to assert its position relative to any settlement proceeds, it is disappointing that Debtor would acquiesce in Byline Bank's position without any analysis or contest. As such, Gloria Cales offers the following analysis for the Court's consideration.

### C. The Arizona Uniform Commercial Code.

Arizona's version of the Uniform Commercial Code ("**AZUCC**") is codified in Title 47 of the Arizona Revised Statutes ("**ARS**"). The AZUCC defines a general intangible as follows:

> "General intangible" means any personal property, including things in action, **other than** accounts, chattel paper, **commercial tort claims**, deposit accounts, documents, goods, instruments, investment property, letter-of-credit rights, letter of credit, money, and oil, gas or other minerals before extraction. General intangible includes payment intangibles and software.

ARS § 47-9102 (42) (emphasis added). A commercial tort claim is defined by the AZUCC as:

> …a claim arising in tort with respect to which:
>
> (a) The claimant is an organization; or
>
> (b) The claimant is an individual and the claim:
> (i) Arose in the course of the claimant's business or profession; and
> (ii) Does not include damages arising out of personal injury to or the death of an individual.

ARS § 47-9102 (13). Finally, the AZUCC also defines a "payment intangible" as follows:

> …a general intangible under which the account debtor's principal obligation is a monetary obligation.

ARS § 47-9102 (61).

Pursuant to the AZUCC, collateral must be sufficiently described in order for a security interest to attach. *See generally*, ARS § 47-9108. A description by type of collateral (i.e., "general intangible") is insufficient for commercial tort claims. ARS § 47-9108(E)(1). Finally, a security interest does not attach to a commercial tort claim under a category constituting an after-acquired property clause. ARS § 47-9204(B)(2).

**D. Byline Bank does not Have a Security Interest on Debtor's Commercial Tort Claims Against Gloria Cales.**

Debtor's claims against Gloria Cales in the State Court Litigation include contract claims and commercial tort claims. The commercial tort claims against Gloria Cales arose subsequent to the time Byline Bank obtained its security interest and are obviously not specifically described in Byline Bank's UCC. Moreover, Byline Bank's UCC does not attach to the commercial tort claims under the descriptions "general intangibles" or "after-acquired property". Notwithstanding the foregoing, Debtor asserts, citing to *In re Wiersma*, 324 B.R. 92 (9th Cir. BAP 2005), *reversed on appeal,* 483 F. 3d 993 (9th Cir. 2007), that upon a settlement, the commercial tort claims against Gloria Cales transforms into a "payment intangible" that is then covered by the general category of "general intangible". Debtor's Brief at 7. Debtor overstates the significance of *Wiersma*.

In *Wiersma*, the debtors were dairy farmers whose cows had been subjected to electrical shocks from faulty wiring and had been culled until the herd was liquidated. *Wiersma*, 324 B.R. at 99. Debtors sued the electrical contractor for the damages to its cattle and settled the suit for $2.5 million. *Id*. at 100. The bank held a perfected security interest in debtors' dairy herd and in, among other things, all inventory, livestock, general intangibles, after-acquired property, and all proceeds and products of the collateral including insurance proceeds. *Id*. at 99. A settlement was paid by debtors' insurance company and the bank claimed that the settlement proceeds constituted its cash collateral. *Id*. at 100. On a motion to determine secured status, the bankruptcy court determined that the lawsuit against the electrical contractor was a contract action. *Id*. As a result, the

bankruptcy court held that the bank held a security interest in the settlement proceeds as a general intangible, or alternatively, as proceeds of the bank's livestock collateral. *Id.*

The 9th Circuit BAP decision in *Wiersma* does not assist in analyzing the scope of Byline Bank's security interest in the commercial tort claims against Gloria Cales for several reasons. First, the decision was reversed on appeal on jurisdictional grounds. *Wiersma*, 483 F.3d 933 (9th Cir. 2007). Second, *Wiersma* involved proceeds of insurance on collateral (the dairy herd) of the lender. *See In re Gallagher*, 331 B.R. 895 (9th Cir. BAP 2005) (9th Cir. BAP itself declined to follow *Wiersma*). Third, *Wiersma* does not address or discuss provisions of the Uniform Commercial Code analogous to ARS § 47-9108(E)(1) and ARS § 47-9204(B)(2) relative to the insufficiency of the description of the commercial tort claims and the failure of the security interest to attach to after-acquired commercial tort claims. *See In re Zych*, 379 B.R. 857 (Bankr. D.Minn. 2007) (lender did not have security interest in commercial tort claim because security agreement did not adequately describe the collateral and because the commercial tort claim arose after the grant of the security interest). Finally, **Wiersma** does not address the impact of 11 U.S.C. § 544 which grants to a trustee or debtor-in-possession an intervening hypothetical judgment lien. *See In re Sarah Michaels, Inc.*, 358 B.R. 366 (Bankr. C.D. Ill. 2007) (Bank's argued security interest in payment intangibles trumped by trustee's lien).

## III. CONCLUSION.

Debtor sought protection under chapter 11 of the Bankruptcy Code with no ability to reorganize and is now trying to sweep the impact of its filing under the rug by seeking dismissal. In doing so, Debtor attempts to walk away from creditors with unpaid claims and a huge unpaid administrative expense hole. Debtor's principal, Fitzgerald, refuses to accept responsibility for any of Debtor's claims or expenses. Debtor and Fitzgerald also refuse to engage in settlement discussions which would benefit unsecured creditors, the secured claim of Byline Bank, and holders of administrative and priority claims. The analysis provided herein should be more than sufficient for Debtor to engage in a

Case 2:20-bk-10911-DPC    Doc 135    Filed 02/26/21    Entered 02/26/21 08:40:29    Desc
Main Document    Page 6 of 7

meaningful settlement dialogue with Byline Bank to carve up the settlement proceeds between Byline Bank and Debtor's bankruptcy estate. Yet, Debtor refuses to engage in those discussions. This refusal illustrates the inherent conflict of interest that permeates this case as Debtor continues to act in the best interest of its principal Fitzgerald and not in the best interest of Debtor's bankruptcy estate. This conflict can only be reconciled by converting Debtor's bankruptcy case and permitting a chapter 7 trustee with a fiduciary duty to the estate to control the assets of the estate including the Debtor's claims against Gloria Cales in the State Court Litigation.

WHEREFORE, Gloria Cales respectfully requests the Court to enter an order converting this case to a proceeding under Chapter 7, and to grant such other and further relief as is just and proper under the circumstances.

DATED this 26th day of February 2021.

**BURCH & CRACCHIOLO, P.A.**

By  /s/ Alan A. Meda (#009213)
    Alan A. Meda
    *Attorneys for Gloria Cales*

Served via ECF on CM/ECF users this 26th day of February 2021, which constitutes service pursuant to L.R. Bankr. P. 9076-1.

 /s/ Tracy Dunham